### Commonwealth v. Sims

*Richard Lewis,* Assistant District Attorney, for Commonwealth.

*Arthur L. Goldberg,* for defendant.

WICKERSHAM, J., October 11, 1972.—Defendant, Gloria J. Sims, was indicted on a charge of larceny, it being alleged that she willfully, maliciously and feloniously did steal, take and carry away property of Philipsborn Store; to wit, a dress and pants outfit having an aggregate value of $26. The case was heard by this court on a waiver of jury trial and a plea of not guilty to the charge of larceny.[1]

Defendant, through her able and experienced counsel, was not contesting the fact of having attempted to unlawfully steal the property of Philipsborn Store as charged but rather the position of defendant was that it would be unconstitutional to allow the prosecuting witness or the prosecuting officer to have the choice of imposing a summary offense, i.e., shoplifting or a felony, i.e., larceny, at his discretion. Consequently, defendant moved for dismissal of the larceny charge, indicating that she would enter a plea of guilty to shoplifting.[2]

The argument of counsel for defendant followed the lines that persons who become involved in minor offenses, so described by counsel, of this kind do not ordinarily have sufficient money to take a case up on appeal; that an important constitutional question is raised by virtue of the fact that a storekeeper has the choice of selecting a felony charge against a summary offense and that such power is thereby unconstitutionally vested in a person not learned in the law and, finally, that the district judge is not empowered to do anything except accept the facts presented by the individual prosecutor.

---

[1] Proceedings before Judge Richard B. Wickersham, August 31, 1972; Richard Lewis, Assistant District Attorney for the Commonwealth and Arthur L. Goldberg, Esq., for defendant.

[2] Section 816.1 of the Act of June 24, 1939, P. L. 872, as amended (shoplifting), 18 PS §4816.1; section 807 of the Act of June 24, 1939, P.L. 872, as amended (larceny), 18 PS §4807.

We denied the motion to dismiss the larceny charge, heard the evidence and found defendant guilty.

In Commonwealth v. King, 88 Dauph. 241 (1967), defendant-petitioner, who had pleaded guilty to larceny, claimed in a Post Conviction Hearing Act proceeding that he should have been prosecuted for shoplifting instead. Speaking through Judge Shelley, we said:

"There is no merit to the petitioner's claim that he should have been prosecuted under section 816.1 of the Act of June 24, 1939, P.L. 872, as amended, (shoplifting), 18 PS §4816.1 instead of section 807 of the Act of 1939, supra, (larceny), 18 PS §4807.

"Shoplifting is the theft, by a non-employee, of goods displayed for sale in a store during store hours, 61 Dickinson Law Review 255, footnote 1, and, therefore, comes within the definition of larceny as defined by the appellate courts of Pennsylvania. The Supreme Court said, in Thomas, Appellant v. Kessler et al., 334 Pa. 7 (1939), on page 9, that 'Larceny is the felonious taking and carrying away of the personal goods of another.' The Superior Court of Pennsylvania, quoting the Thomas case, said in Gottesfeld v. Mechanics and Traders Insurance Company, Appellant, 196 Pa. Super. 109, 116 (1961), 'Larceny . . . is taking or carrying away the property of another with intent to convert it to the use of someone other than the owner without his consent.'

"Shoplifting is generally considered a problem by all retail merchants. It is especially acute to the small retailer who cannot afford either special detectives or 'outside' services. Usually the merchandise stolen is not of great value and the offenders are not professional. Many merchants hesitate and often are reluctant to prosecute the offenders under the larceny

statute for various reasons, the chief of which is the time and effort required of their personnel in attending court trials.

"The shoplifting statute was enacted to provide a summary proceeding by which a merchant could recover his merchandise with the least amount of effort and time on his part.

"An examination of the shoplifting statute indicates it is not intended in any way to modify, alter, amend, replace or repeal the larceny statute. Subsection (c) of section 1 of the Act of December 30, 1959, P. L. 2062, amending the Act of 1939, supra, provides:

" 'The offenses for which penalties and the presumptions are herein provided shall not be exclusive, and shall be in addition to previously existing offenses, and such rights and presumptions as were heretofore provided by law. No magistrate, alderman or justice of the peace shall have the power to reduce any charge of larceny to a charge of shoplifting as defined in this section.' "

Losses from shoplifting and the expense of fighting it keep climbing, create a huge burden paid by honest tradesmen and customers on every purchase. According to an article in U. S. News & World Report [3] it is said that:

"Hijackers, burglars, thieves and other criminals are costing U.S. Business close to 16 billion dollars a year—and an official study indicates that the situation is steadily getting worse.

"Some authorities believe the direct loss to commercial enterprises may actually be three times higher than the 16-billion-dollar estimate of the Federal Bureau of Domestic Commerce.

---

[3] October 2, 1972, page 29, entitled "Growing Toll of Crimes Against Business."

" 'The magnitude and rate of increase in the costs to business of ordinary crime are clearly evident, even though the precise figures are hard to establish,' a report by the Bureau warns.

"*Security costs.* The estimate includes 2.5 billion dollars spent for 289,900 guards and detectives, and 800 million for crime-prevention devices, such as television-surveillance equipment, armored cars and burglar alarms.

"But it does not include indirect costs. The Library of Congress research service reported to a Senate committee that theft in the transportation industry alone cost 1.5 billion dollars in 1970, but noted that this was only the tip of the iceberg. 'Additional indirect costs,' it said, 'costs of processing claims, costs of lost business and profits—raised the estimate to 8 to 10 billion dollars.'

"*Retailers hardest hit.* The Bureau of Domestic Commerce limited its study to what it terms seven 'ordinary' crimes against business—burglary, robbery, shoplifting, vandalism, employe theft, bad checks and arson.

"Retail stores are by far the biggest losers—an estimated 4.8 billion dollars annually. Shoplifters were blamed for 28 per cent of the inventory loss . . ."

## ORDER

And now, October 11, 1972, the district attorney is hereby directed to produce defendant, Gloria J. Sims, for sentencing.[4]

___

[4] As stated hereinabove, we denied defendant's motion to dismiss the larceny charge in return for a plea of guilty to the summary offense of shoplifting. At the nonjury trial, however, we indicated to defendant's counsel that we desired to further consider his position and in particular his "constitutional" arguments. Our action today is simply to confirm our trial ruling, sustaining

It is further ordered, however, that defendant shall have a period of seven days from the date of this order for filing a motion under Pennsylvania Rule of Criminal Procedure 1123.

the validity of the larceny charge and directing the district attorney to call defendant for sentencing, allowing, however, defendant her normal rights under and pursuant to Pennsylvania Rule of Criminal Procedure 1123.